**STABILISIERUNGSFONDS FUR WEIN et al., Appellants,**

v.

**KAISER STUHL WINE DISTRIBUTORS PTY. LTD., et al.**

**No. 79–1392.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 4, 1981.

On Motion to Strike Filed March 2, 1981.

Decided March 23, 1981.

Milo G. Coerper and James L. Dooley, Washington, D. C., for appellants.

Thomas E. Dorn, Chicago, Ill., with whom John F. Smith, Arlington, Va., was on brief, for appellees.

Jerry D. Voight, Washington, D. C., and Samuel C. Miller, III, Alexandria, Va., were on brief for amicus curiae, Patent, Trademark and Copyright Section of the Bar Ass'n of the District of Columbia, urging reversal of the District Court decision on Rule 19.

Before PECK *, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, WILKEY and GINSBURG, Circuit Judges.

## ORDER

PER CURIAM.

On July 9, 1980, appellants moved to strike portions of appellees' brief. A motions panel referred the matter to the panel assigned to hear and decide the appeal. On January 30, 1981, prior to oral argument, the court ordered:

Appellants' motion to strike appellees' discussion of D.C.Code § 13–423(b) is denied. The request is frivolous. Appellants seek jurisdiction over appellees under D.C. Code § 13–423, the District of Columbia's "long-arm" statute. Subsection (b) is an integral part of that statute, one that this court cannot ignore while considering appellants' arguments.

The requests to strike appellees' references to facts outside the record and to the Fed.R.Civ.P. 12(b)(6) motion, unresolved by the district court, are also denied. While

appellants' motion is not frivolous in these respects, motions to strike, as a general rule, are disfavored[1]. The points raised in the motion might have been presented, concisely, in the reply brief. There was no need for appellants to burden this court with a motion to strike. We note at this time, however, that since the district court did not pass upon the motion to dismiss for failure to state a claim upon which relief can be granted, the court will not hear oral argument on that issue.

Before PECK,* Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, WILKEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

In this trademark infringement case, two German plaintiffs seek district court adjudication of their claims against an Australian wine producer, its Australian subsidiary, a New York importer, and a District of Columbia liquor store. The claims relate to sales of the Australian defendants' wine in the United States generally and in this District specifically. The district court held that it lacked personal jurisdiction over the Australian defendants. It then declared those defendants "indispensable parties." On that basis, it held that the action could not proceed solely against the New York and District of Columbia defendants. Accordingly, the district court dismissed the entire case. We reverse and direct reinstatement of the action as to all defendants. We hold that the District of Columbia long-arm statute authorizes adjudication of the claims against the Australian wine companies, and that the district court improperly dismissed the claims against the New York importer and District of Columbia retailer.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

**1.** *Compare* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1380, at 783 (1969) (motions to strike under Fed.R.Civ.P. 12(f) "are viewed with disfavor and are infrequently granted"), *with id.* § 1382, at 827 (disfavored character is relaxed "in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations").

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

## I. *Facts*

Zentralkellerei Badischer Winzergenossenschaften (ZBW) is a German cooperative association that produces and sells "Kaiserstuhl-Tuniberg" wines. Stabilisierungsfonds Fur Wein (SFW) is a German organization that maintains the quality and promotes the sale of German wines. ZBW and SFW assert that the names "Kaiserstuhl" and "Kaiserstuhl-Tuniberg" are common law certification marks [1] designating wines from a particular region of Germany.

Barossa Co-operative Winery (Barossa) is an Australian corporation that produces wines labelled "Kaiser-Stuhl" and markets the wine in the United States. Barossa exports Kaiser-Stuhl wines to the United States through its wholly owned Australian subsidiary, Kaiser Stuhl Wine Distributors (Kaiser). Kaiser ships the wines to two exclusive United States importers, Victoire Imports Co. in San Francisco and Peartree Imports Co. in New York. Victoire distributes the wine in the western United States and Peartree, in the eastern part of the country. One of the east coast retailers that has purchased Australian Kaiser-Stuhl wine from Peartree is A & A Liquors, a District of Columbia liquor store that also sells German Kaiserstuhl-Tuniberg wine.

In October 1978, ZBW and SFW initiated this suit to halt the distribution of Australian wines bearing the Kaiser-Stuhl label. They sued Barossa, Kaiser, Peartree, and A & A Liquors in the United States District Court for the District of Columbia. Count I of the complaint alleged that defendants' distribution of Kaiser-Stuhl wine violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), infringed SFW's common law rights in the marks Kaiserstuhl and Kaiserstuhl-Tuniberg, and constituted unfair competition. Count II alleged that defendant Kaiser had wrongfully obtained registration of the Kaiser-Stuhl mark on the United States Supplemental Register, *see* 15 U.S.C. § 1091 (1976), by representing that the name Kaiser-Stuhl distinguished its wine from other wines. The plaintiff requested, *inter alia*, an injunction against further infringement and an order striking the name Kaiser-Stuhl from the Supplemental Register.

The Australian defendants, Barossa and Kaiser, moved to dismiss, pursuant to Fed. R.Civ.P. 12(b)(2), for lack of personal jurisdiction. The United States defendants, Peartree and A & A, moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. The district court agreed that it lacked jurisdiction over the Australian defendants and granted their 12(b)(2) motion. The court did not reach the Peartree and A & A 12(b)(6) motion. Instead, it held *sua sponte*, without benefit of briefs or argument, that the Australians were indispensable parties. It therefore dismissed the entire suit under Fed.R.Civ.P. 19(b).[2] Plaintiffs appealed both determinations and the Patent, Trademark and Copyright Section of the Bar Association of the District of Columbia submitted an amicus curiae brief urging reversal of the Rule 19(b) determination. We address, first, the issue of adjudicatory authority over the Australian

---

1. A "certification mark" is "a mark used upon or in connection with the products or services of one or more persons other than the owner of the mark to certify regional or other origin, material, mode of manufacture, quality, accuracy or other characteristics of such goods or services." 15 U.S.C. § 1127 (1976). A common law certification mark is one that has not been formally registered but in which the holder has developed equitable rights. *See generally Florida v. Real Juices, Inc.*, 330 F.Supp. 428 (M.D.Fla.1971).

2. Rule 19(b) commands the court to determine "whether in equity and good conscience" an action should proceed without an absent person; the rule states that factors the court should consider include:

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

defendants and, second, the Rule 19(b) disposition.[3]

## II. *Adjudicatory Authority Over the Australian Defendants*

A motion to dismiss for lack of jurisdiction over the person requires inquiry at two levels. In United States jurisprudence, the outer boundaries of a court's authority to proceed against a particular person or entity is set for federal tribunals by the due process clause of the Fifth Amendment and for the state courts by the due process clause of the Fourteenth Amendment.[4] If due process limits are not exceeded, "judicial jurisdiction" may be said to exist. However, exercise of judicial jurisdiction is further conditioned on rules of "competence." These rules indicate the extent to which the political unit involved (nation or state) has chosen to assert adjudicatory authority. Rules of competence, found in statutes or court rules, may be coextensive with due process, or they may require connections between the defendant or the episode in suit and the forum beyond those due process commands. *See* Restatement (Second) of Conflict of Laws, Ch. 3, Introductory Note at 100–02 (1969) (defining and distinguishing the terms "judicial jurisdiction" and "competence"); *cf. id.* §§ 104, 105.

■ In this case, judicial jurisdiction in the constitutional sense concededly exists with respect to all defendants and no question is raised concerning the court's competence with respect to defendants Peartree and A & A Liquors. Defendants Kaiser and Barossa claim in support of the Rule 12(b)(2) dismissal that *no rule of competence authorizes the district court to exercise judicial jurisdiction over them.* However, counsel for the Australian defendants acknowledged at oral argument that requiring those companies to defend this action in the District of Columbia does not offend due process. Kaiser ships Barossa's wine to Peartree, a New York importer with exclusive authority to distribute the wine throughout the eastern part of the United States. The Australian defendants thus have arranged for introduction of their wine into the United States stream of commerce with the expectation (or at least the intention and hope) that their products will be shelved and sold at numerous local outlets in diverse parts of the country. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–568, 62 L.Ed.2d 490 (1980); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199–200 (5th Cir. 1980). As defendants recognize, therefore, the links between the claims in suit and the Australian defendants' arrangements to develop and serve a market in the United States make the district court here a fair and reasonable forum, within due process constraints, for the action plaintiffs have brought.[5]

■ Turning to the contested issue, does an applicable rule of competence authorize

**3.** After both plaintiffs and defendants had filed their briefs on appeal, plaintiffs moved to strike portions of defendants' brief. We dealt with that motion in an order issued before oral argument. *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors*, No. 79–1392 (D.C.Cir. filed Mar. 2, 1981).

**4.** With respect to state court jurisdiction, the due process limitation serves two purposes: it ensures fairness to the defendant ("the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there") and it prevents states from encroaching upon each other's sovereignty. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 297, 100 S.Ct. 559, 564, 567, 62 L.Ed.2d 490 (1980). As to federal court jurisdiction, particularly in litigation involving federal claims, the first con-

cern, the fairness-to-defendant consideration, remains vital, and the sovereign concerns of other nations may enter the calculus, but safeguarding the sovereignty of one state of the United States against a sister state's intrusion is not a relevant concern.

**5.** While the ties are plainly adequate to permit litigation of claims relating to the Australians' introduction of their wine into the United States stream of commerce, the affiliations conceded to exist in this case would not be adequate to support general, "all purpose" adjudicatory authority, *i. e.*, authority to hear and decide claims unrelated to the defendants' exploitation of a United States market for their products. *See generally* von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121 (1966).

the district court to hale the Australian defendants into this action? We believe the District of Columbia long-arm statute, particularly D.C.Code § 13–423(a)(1) (1973), provides such authorization. That provision authorizes the "exercise [of] personal jurisdiction over a person . . . as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia."

We explain first why federal courts, in cases such as this one, refer to local statutes or rules governing competence. In some areas, Congress has delineated the reach of the federal courts—the length of the court's arm—with respect to nonresident defendants by providing for nationwide service of process or service wherever defendant is "doing business" or "may be found." [6] For most cases, however, Congress has made no special provision and the federal courts are merely referred to the statutes or rules of the states in which they sit. *See* Fed.R. Civ.P. 4(e). Plaintiffs ZBW and SFW do not urge that any federal statute specifically authorizes the district court to hale Kaiser and Barossa before it in this action.[7] Therefore, pursuant to the Rule 4(e) reference, we must look to the District of Columbia long-arm statute.[8]

We note that in this case involving alien defendants and some federal claims, application of the local long-arm statute "produce[s] perplexities" since the statute was drafted from the point of view of the District community, not from the perspective of the nation as a whole. von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121, 1124 n.6 (1966). Under these circumstances, it might be appropriate for the federal courts to disregard aspects of the state statute and state court interpretations of it that do not fit the federal frame of reference. *See id.* at 1125 n.6.[9] We need not take that step in this case, however, since we find that the District of Columbia long-arm statute, when applied as we conclude a local court would apply it, permits the district court to assert personal jurisdiction over Kaiser and Barossa.

The District's long-arm statute authorizes the exercise of personal jurisdiction over nonresident defendants in six situations. The first subsection, as noted above, allows the court to proceed when the claim arises out of any business the nonresident transacts in the District. D.C.Code § 13–423(a)(1) (1973). The District of Columbia Court of Appeals has declared that this clause "permit[s] the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution." *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 810–11 (D.C.1976) (en banc).[10]

---

**6.** *See, e. g.*, 28 U.S.C. §§ 1335, 1397, 2361 (1976) (interpleader actions); 28 U.S.C. § 1655 (1976) (actions seeking to assert rights in real or personal property); 28 U.S.C. § 1695 (1976) (shareholders' suit against corporation); 15 U.S.C. §§ 5, 25 (1976) (actions by United States to enforce the antitrust laws). The service of process provisions of these statutes do not relate, primarily, to the notice-giving function of service; they serve more importantly to define the competence of federal courts in particular classes of cases to proceed against nonresident defendants.

**7.** In their Statement of Points and Authorities submitted to the district court, plaintiffs made an ambiguous reference to the Lanham Act. Joint Appendix (J.A.) at 29. We are not sure whether they intended to urge that the Lanham Act constitutes a federal basis for requiring the Australian defendants to appear and defend in the district court. In any.case, they have not repeated this argument on appeal.

**8.** The District of Columbia is considered a "state" for the purposes of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 81(e).

**9.** *See also* note 4 *supra*. *But cf. Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 416–19 (9th Cir. 1977).

**10.** The court's opinion in *Environmental Research International* did not limit this language to the "transacting any business" clause. The court, therefore, may have meant that the entire long-arm statute is as broad as the due process clause. All of the District of Columbia decisions construing the long-arm statute as coextensive with the due process clause, however, have involved the "transacting any business" clause. *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C.1979) (per curiam); *Rose v.*

We are convinced that when the "transacting any business" language is read to extend to the limits of due process, it encompasses a case like the present one where a nonresident defendant ships goods to an intermediary with the expectation that the intermediary will distribute the goods in a region that includes the District of Columbia.

While Kaiser and Barossa have not personally entered the District to conduct business,[11] they have given one importer, Peartree, exclusive authority to sell their wine in this forum and have persistently delivered wine to that importer. They have never attempted to curtail Peartree's authority to distribute wine here, and Peartree has succeeded in selling cases of the wine on several occasions over a span of years to at least one District of Columbia retailer. Kaiser and Barossa have thus chosen a course of conduct that renders sales of· their wine here not merely foreseeable, but affirmatively welcomed. Unquestionably, they have a stake in, and expect to derive

benefits from, a market for their goods in the District.

As a consequence of their access to District consumers and the placement of their wine on a local retailer's shelf, Kaiser and Barossa may invoke "the benefits and protection[s]" of local law. *See Environmental Research International, supra,* 355 A.2d at 812 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). That law safeguards their Kaiser-Stuhl mark against infringement by producers with an inferior claim to the Kaiser-Stuhl name.[12] The District of Columbia Court of Appeals has recognized that activity entitling a defendant to the protection of local law is an indication that the "transacting any business" criterion is satisfied. *Environmental Research International, supra,* 355 A.2d at 812.

In sum, we conclude that the Australian defendants, as foreign producers who anticipate and seek sales of their goods in a market that includes the District of Columbia, transact business here within the meaning of D.C.Code § 13–423(a)(1) (1973),[13] and

*Silver,* 394 A.2d 1368, 1369–70 (D.C.1978); *Cohane v. Arpeja-California, Inc.,* 385 A.2d 153, 158 (D.C.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978); *Bueno v. La Compania Peruana de Radio-Difusion,* 375 A.2d 6, 8 n.3 (D.C.1977). We are unsure, therefore, whether provisions of the long-arm statute other than the "transacting any business" section embrace the full sweep of the due process clause. *See also Mouzavires v. Baxter,* No. 11696, slip op. at 6–9 (D.C. Dec. 21, 1979) (indicating that only the "transacting any business" clause is coextensive with due process), *vacated* (D.C. Feb. 4, 1980), *reargued en banc* (D.C. Apr. 28, 1980).

11. Counsel for ZBW and SFW noted at oral argument that Kaiser and Barossa may have acted in the District in connection with their registration of the Kaiser-Stuhl mark. The District of Columbia, however, has grafted a "governmental contacts" exception to its long-arm statute. That exception holds that the local courts do not exercise personal jurisdiction over a nonresident on the basis of activity in the District relating solely to dealings with the federal government. *Environmental Research International, supra,* 355 A.2d at 813. We do not rest any part of our decision on the Australians' contacts with federal offices.

12. *See* D.C.Code § 22–1402 (1973) (imposing criminal penalty on anyone who "wilfully forg-

es or counterfeits or makes use of any imitation calculated to deceive the public" with an intent to pass off the imitation as the imitated product); *Anti-Defamation League of B'nai B'rith v. National Mexican American Anti-Defamation Committee, Inc.,* 510 F.2d 1246 (D.C.Cir.1975) (suit for injunction against use of words "anti-defamation" in committee name); *Armco Steel Corp. v. International Armament Corp.,* 249 F.Supp. 954 (D.D.C.1966) (suit for trademark infringement and unfair competition under both common law and Lanham Act).

13. Two decisions cited by Kaiser and Barossa, *Ajax Realty Corp. v. J. F. Zook, Inc.,* 493 F.2d 818 (4th Cir. 1972) (applying Virginia law), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973), and *Vitro Electronics v. Milgray Electronics, Inc.,* 255 Md. 498, 258 A.2d 749 (1969), do not persuade us otherwise. Decisions applying Virginia and Maryland law are persuasive authority in the District of Columbia since Congress modeled the District's long-arm statute on the statutes of those neighboring states. *See Environmental Research International, supra,* 355 A.2d at 810. In *Ajax Realty* and *Vitro Electronics,* the courts found that connections similar to defendants' in this litigation did not constitute "transacting business." In *Ajax Realty,* however, the court sanctioned the exercise of personal jurisdiction over a nonresident defendant based on another provision

are amenable to suit in the District on the claims plaintiffs tender.

Moreover, we believe that subsection (a)(4) of the District's long-arm statute provides an alternate basis for upholding the exercise of personal jurisdiction over Kaiser and Barossa. That subsection provides for suit against a nonresident "who caus[es] tortious injury in the District of Columbia by an act or omission outside the District" so long as the nonresident "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C.Code § 13–423(a)(4) (1973). Kaiser and Barossa act in Australia, where they attach the disputed mark to their wine, and are alleged to cause an injury in the District, where the Australian and German wines are sold side-by-side. But subsection (a)(4) requires something more. Defendants must engage in a "persistent course of conduct" or derive "substantial revenue" from sales here.

Kaiser and Barossa do not deny that they derive "substantial revenue" from sales in the United States. They assert, however, that revenue from sales in the District is insubstantial. In absolute and percentage terms, their characterization may be accurate.[14] However, revenue from sales in the District exceeds the District's per capita share of Australian Kaiser-Stuhl eastern United States wine sales.[15] Rigid adherence to the absolute or percentage approach defendants urge would mean that the (a)(4) "derives substantial revenue" test, while easily met if the United States is considered the market, might not be met in any single state of the United States. We believe it more sensible, therefore, to conclude that the "substantial revenue" test may be satisfied, even when the amount of locally derived revenue is small in absolute and percentage terms, if that revenue exceeds the state's per capita share of substantial nationally derived revenue. The Australian defendants' receipts from wine sold in the District of Columbia meet this standard. We therefore find that subsection (a)(4) of the District's long-arm statute is appropriately invoked in support of the exercise of adjudicatory authority over Kaiser and Barossa in this action.[16]

of the Virginia long-arm statute; the court therefore was not impelled to probe the full meaning of the "transacting any business" clause. 493 F.2d at 821–22. And in *Vitro Electronics*, the Maryland Court of Appeals noted that "it is questionable whether the Maryland statute is as broad as the permissible constitutional limits of due process would allow." 255 Md. at 752 n.3, 258 A.2d at 753 n.3. That decision, therefore, is not dispositive in the District of Columbia, where the highest local court has held that the "transacting any business" clause is coextensive with due process.

14. Between 1974 and 1978, Kaiser and Barossa exported 2142 cases of wine to Peartree. Affidavit of Alfred Robert Litchfield at 2, J.A. at 15. Twenty-eight of these cases, or 1.3%, were sold to purchasers in the District of Columbia. Affidavit of Leonard Birnbaum at 1, J.A. at 19. The total "purchaser cost" of the cases sold in the District of Columbia was only $747.20. *Id.*

15. The resident population of the states east of the Mississippi River was approximately 138,-000,000 in 1977. The resident population of the District of Columbia was approximately 690,-000 during the same year. Bureau of the Census, U. S. Department of Commerce, Population Estimates and Projections 7 (Nov. 1978), J.A. at 48. The District of Columbia popula-

tion, therefore, was about .5% of the eastern United States population.

16. Plaintiffs also contend that subsection (a)(3) of the District's long-arm statute is applicable in this case. We reject this argument. Subsection (a)(3) applies to a defendant who "cause[s] tortious injury in the District of Columbia by an act or omission in the District. D.C.Code § 13–423(a)(3) (1973). *Olin Mathieson Chemical Corp. v. Molins Organizations*, 261 F.Supp. 436 (E.D.Va.1966) (applying Virginia law), is the sole decision cited by plaintiffs to support this subsection (a)(3) argument. In that case, the nonresident defendant distributed brochures in the forum state. That in-state distribution, the court found, contributed to patent infringement in the state. Accordingly, the court concluded that defendants' conduct within the state caused or contributed to a tortious injury in the state. The Australian defendants in this case have engaged in no in-state activity comparable to the distribution of brochures in *Olin Mathieson*. In addition to the absence of supporting precedent, we decline to read subsection (a)(3) in the manner plaintiffs propose for this overriding reason: the suggested reading is inconsistent with the legislative decision to distinguish cases in which act and injury coincide in the forum

Finally, we reject defendants' argument that subsection (b) of the District's long-arm statute excludes the exercise of adjudicatory authority with respect to count II of the complaint, which seeks to cancel defendants' registration of the Kaiser-Stuhl mark. Subsection (b) limits long-arm competence to "a claim for relief arising from acts enumerated" by subsection (a) of the statute. The claim to cancel registration, defendants contend, does not arise from any transaction of business in the District of Columbia or from any act that causes injury in the District.

The District of Columbia Court of Appeals, however, has noted that "[t]he concept of cause of action or claim for relief [in subsection (b)] should be broadly construed to cover an entire transaction so that, when possible, the entire dispute may be settled in a single litigation." *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 159 (D.C.) (quoting Uniform Interstate & International Procedure Act (13 U.L.A.) § 1.03, Commissioners' Comment, at 288 (1975)), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978). Plaintiffs ZBW and SFW allege one encompassing injury, the sale of wine with a label that infringes their common law certification mark. Cancellation of defendants' registration of the Kaiser-Stuhl mark is properly perceived as one of the remedies plaintiffs seek for that injury. We hold, therefore, that plaintiffs' cancellation demand "arises from" the activity that affiliates Kaiser and Barossa with the District under subsection (a) of the long-arm statute. Accordingly, the district court has adjudicatory authority to hear and decide the entire controversy.

### III. Dismissal of Claims Against the United States Defendants

■ Since we hold that the district court has adjudicatory authority (both jurisdiction as determined by the Constitution, and competence pursuant to Rule 4(e)) over the Australian defendants with respect to the claims in suit, we must also reverse the district court's further determination dismissing the action in its entirety. Labelling the Australian defendants "indispensable parties," the district judge held that the claims against the United States defendants, distributor Peartree and retailer A & A Liquors, could not proceed.[17] Although that *sua sponte* indispensable party determination is now moot, we regard the district court's disposition as sufficiently extraordinary to warrant this further comment. Even if the district court lacked adjudicatory authority over the Australian defendants, we would reinstate the claims against Peartree and A & A Liquors. Courts have long held that in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor. *See, e. g., Wells v. Universal Pictures Co.*, 166 F.2d 690, 692 (2d Cir. 1948); *Grocers Baking Co. v. Sigler*, 132 F.2d 498, 502 (6th Cir. 1942). Since joint tortfeasors are jointly and severally liable, the victim of trademark infringement may sue as many or as few of the alleged wrongdoers as he chooses; those left out of the lawsuit, commentary underscores, are not indispensable parties. *See* 3A Moore's Federal Practice ¶ 19.14[2.–4] (2d ed. 1979).[18]

((a)(3) cases) from those in which activity outside the forum causes consequences within it ((a)(4) situations). *See* Note, *The Virginia "Long Arm" Statute*, 51 Va.L.Rev. 719, 748, 750 (1965) (discussing statute on which District of Columbia statute was modeled).

17. Peartree and A & A urge that we uphold the judgment in their favor on the ground that, as to them, the complaint fails to state a claim upon which relief can be granted. These defendants moved for such a disposition, pursuant to Fed.R.Civ.P. 12(b)(6), in the district court. However, the district judge did not rule on the motion and we decline to consider that matter in the first instance. On remand, of course, defendants may renew their Rule 12(b)(6) motion.

18. *See also* Lewis, *Mandatory Joinder of Parties in Civil Proceedings: The Case for Analytical Pragmatism*, 26 U.Fla.L.Rev. 381, 401 n.80 (1974):

> [I]t would be inappropriate to change the traditional rule that views joinder of joint tortfeasors as permissible but not mandatory. If a plaintiff has no desire to litigate against a particular joint tortfeasor, then it would be champertous of the law to require joinder .... A defendant who might desire contribution against a co-joint tortfeasor can invoke the impleader procedure ....

The district court's decision to the contrary overlooked this settled rule. In addition, the decision contradicted the recognized philosophy of Rule 19, to avoid dismissal whenever possible. *See Heath v. Aspen Skiing Corp.*, 325 F.Supp. 223, 229 (D.Colo. 1971). For these reasons, we would reverse the district court's Rule 19(b) dismissal of the claims against Peartree and A & A Liquors, even if the plaintiffs had failed to join the Australian defendants or if the jurisdictional objection of those defendants had been well founded.

*Conclusion*

The judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.