**Hugh H. SMITH, et al., Appellants,**

v.

**Charles R. JENKINS, et al., Appellees.**

**No. 81–1023.**

District of Columbia Court of Appeals.

Argued March 25, 1982.

Decided Oct. 13, 1982.

---

William F. Causey, Washington, D.C., with whom Anthony C. Morella and Hugh B. Gordon, Washington, D.C., were on brief, for appellants.

Randi S. Nathanson, Washington, D.C., with whom Lee Calligaro, Washington, D.C., was on brief, for appellees.

Before MACK, PRYOR and BELSON, Associate Judges.

PRYOR, Associate Judge:

This is an action for damages arising from investment in a Maryland real estate venture. The single issue presented by this appeal is whether one of the initial investors operated as an agent of appellees and transacted business in the District of Columbia so as to subject appellees to jurisdiction of the Superior Court under the District of Columbia "long-arm statute."[1] Concluding that appellants obtained personal jurisdiction over appellees under this statute consistent with due process, we reverse the trial court's dismissal of the complaint and remand the case for further proceedings.

I

This suit for damages arose from activities by appellees Charles R. Jenkins and William E. Esham, Jr., along with Robert S. Bounds,[2] with regard to a real estate venture in Ocean City, Maryland, in which appellants invested in the Fall of 1973. In this complaint appellants alleged fraud, misrepresentation, breaches of fiduciary duties, conversion and conspiracy against appellees. Before trial of the matter commenced, the trial court, pursuant to Super. Ct.Civ.R. 12(b)(2) and 12(b)(5), granted appellees' motion to dismiss the action on the ground that it lacked personal jurisdiction over them and therefore service of process was insufficient.

According to the complaint, on or about September 30, 1973, appellees and Bounds formed a limited partnership called Herring Landing Limited, in which they were the general partners. The purpose of the partnership was to acquire title to certain real property in Ocean City, Maryland for development and investment. Affidavits of

---

1. D.C.Code 1981, § 13–423(a)(1) provides as follows:

 (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—(1) transacting any business in the District of Columbia.

2. Appellants initially named Bounds as a defendant. Appellants were unable to serve Bounds with process since, according to appellants' counsel, he was purportedly residing in Texas during the proceedings in the trial court.

Howard T. Whitbred,[3] Hewes and Smith, filed in opposition to appellees' motion to dismiss, indicate that appellants signed the limited partnership agreement on October 31, 1973 with the understanding that Jenkins, Esham and Bounds would be the general partners. In fact, one of the signature pages of the agreement indicated that appellees and Bounds were the general partners. At the time appellants purchased shares in the limited partnership, they allegedly were relying on representations which Bounds made to them previously that, among other things, the purchase price of the property was to be $400,000. On the same day Whitbred, Hewes and Smith signed the agreement, but assertedly without their knowledge, Skyline Development Corporation, which was owned and controlled by appellee Jenkins, bought the property at issue for $300,000. In the same transaction, Herring Landing Limited allegedly purchased the property from Skyline for $400,000, the appellees and Bounds thereafter shared a secret profit of $100,000. On November 5, 1973, the limited partnership agreement was filed with a court in Maryland. Bounds, Jenkins and Esham appear as the general partners in the agreement, and appellants are listed among the limited partners.

## II

■ Appellants assert that Bounds acted as an agent of appellees, thereby subjecting them to jurisdiction under D.C.Code 1981, § 13–423(a)(1). Whether an agency relationship exists is a question of fact for which the person asserting it carries the burden of proof. See Edmund J. Flynn Co. v. LeVay, D.C.App., 431 A.2d 543, 548 (1981); Wagshal v. Selig, D.C.App., 403 A.2d 338, 344 (1979); H.G. Smithy Co. v. Washington Medical Center, Inc., D.C.App., 374 A.2d 891, 893 (1977); Rustler's Steak House v. Environmental Associates, Inc., D.C.App., 327 A.2d 536, 539 (1974). Generally an agency relationship results when one person authorizes another to act on his behalf subject to his control, and the other consents to do so. See Rose v. Silver, D.C. App., 394 A.2d 1368, 1371 (1978); RESTATEMENT (SECOND) OF AGENCY § 1(1) (1957). Conduct or words by a person which cause the other reasonably to believe that that person desires him to act on his account and subject to his control are sufficient to establish such authority. Id. § 26. In distinguishing between an agent and an independent contractor for jurisdictional purposes, this court considers the determinative factor to be the measure of control. Rose v. Silver, supra at 1371; Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc., D.C.App., 355 A.2d 808, 812 n. 7 (1976) (en banc). Without control over the forum state actor, it cannot be said that the nonresident defendant is "purposefully avail[ing] itself of the privilege of conducting activities within the forum State." Rose v. Silver, supra at 1371, quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958).

■ After considering the record and arguments of counsel on the motion to dismiss, the trial judge concluded that nothing in the record "indicate[d] that Bounds was acting as an agent or was an agent of [appellees] at the time that Bounds came in to [sic] the District of Columbia and sold some partnership interests." Accordingly, he granted appellees' motion to dismiss the complaint. We reach the opposite conclusion. The record contains numerous indications of an agency relationship. For example, Bounds' alleged meetings with Whitbred, Hewes and Smith, after Bounds, Jenkins and Esham allegedly formed the limited partnership on September 30, 1973, and after Whitbred met with Bounds and Jenkins in Maryland, indicates that Jenkins and Esham had consented to and had control over Bounds' activities. The coincidence of Bounds' obtaining the signatures of Whitbred, Hewes and Smith on the limited partnership agreement and the acquisition of the subject property also supports

---

**3.** Whitbred, the president of Augmentation, a Maryland corporation, executed the Herring Landing Limited Partnership Agreement on behalf of Augmentation.

that conclusion. So too does the filing of the limited partnership agreement only five days after the transfer of the property. Thus the record reveals a degree of control by Jenkins and Esham over Bounds' action which was sufficient to establish, for jurisdictional purposes, an agency relationship between Bounds and appellees. Accordingly, we hold that the trial court's jurisdictional finding that Bounds was not an agent of appellees within the meaning of the statute was "plainly wrong and without evidence to support it." [4]

### III

■ We next address the issue of whether Bounds' activities in the District constituted "transacting any business" within the meaning of D.C.Code 1981, § 13–423(a)(1) and whether service of process under that statute comports with due process. A court may properly assert personal jurisdiction over a nonresident where a statute authorizes service of process and where such service is consistent with due process. *Mouzavires v. Baxter,* D.C.App., 434 A.2d 988, 990 (1981) (en banc), *cert. denied,* —— U.S. ——, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982). Although this is a two-step inquiry, we have held that the "transacting any business" provision of the "long-arm statute" is coextensive with due process. *Mouzavires v. Baxter, supra* at 992; *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc., supra* at 810–11; *Willis v. Willis,* 211 U.S.App.D.C. 103, 106–07, 655 F.2d 1333, 1336–37 (1981). Thus, we have merged the steps into a single due process analysis.

Due process requires that a defendant: (1) receive adequate notice of the suit, and (2) be subject to the personal jurisdiction of the court. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *see Rose v. Silver, supra* at 1370. Since there is no challenge to the adequacy of the notice, the only question before us is personal jurisdiction.

The Supreme Court recently reaffirmed the well-established rule of *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) that due process requires that "certain minimum contacts" exist between the nonresidential defendant and the forum state before a court may exercise personal jurisdiction over him. *World-Wide Volkswagen Corp. v. Woodson, supra* 444 U.S. at 291, 100 S.Ct. at 564. In that case the Supreme Court also refined the "minimum contacts" doctrine by distinguishing its two separate functions: (1) ensuring a fair and reasonable forum for the defendant, and (2) ensuring territorial limits on state power. *Id.* at 292, 100 S.Ct. at 564; *see Willis v. Willis, supra,* 211 U.S.App.D.C. at 107–08, 655 F.2d at 1337–38; *Donahue v. Far Eastern Air Transport Corp.,* 209 U.S.App.D.C. 235, 241, 652 F.2d 1032, 1038 (1981). The Supreme Court explained that the protection against inconvenient litigation is founded on a concept of reasonableness or fairness with a primary emphasis on the burden to the defendant. *World-Wide Volkswagen Corp. v. Woodson, supra* 444 U.S. at 292, 100 S.Ct. at 564. However, courts must also consider competing factors, such as the interests of the plaintiff and of the various states involved. *Id.* Nevertheless, the defendant's contacts with the forum must be "such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 292, 100 S.Ct. at 564, *quoting International Shoe Co. v. Washington, supra* 326 U.S. at 316, 66 S.Ct. at 158. In this regard, it is critical that the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson, supra* 444 U.S. at 297, 100 S.Ct. at 567. Such a connection, of course, would be achieved if "there [were] some act by which the defendant purposefully avails itself of

---

4. This court will reverse the trial court's finding concerning the existence of an agency relationship only if plainly wrong and without evidence to support it. *Rose v. Silver, supra* at 1372;

*Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc., supra; see Rustler's Steak House v. Environmental Assocs., Inc., supra* at 539; D.C.Code 1981, § 17–305(a).

the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra* 357 U.S. at 253, 78 S.Ct. at 1240. Along similar lines, this court recently identified the critical inquiry to be "whether defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum." *Mouzavires v. Baxter, supra* at 995.

 We find that the allegations of Bounds' activities in the District are sufficient minimum contacts to subject appellees to our jurisdiction. According to Smith's and Hewes' affidavits, Bounds met several times with these two men at their offices in the District to discuss investment in Herring Landing Limited in which Bounds alleged he was a general partner. At these meetings Bounds left photographs, plat drawings and other material relating to the limited partnership for Smith's and Hewes' perusal. In addition, Whitbred, Smith and Hewes all signed the limited partnership agreement in the District, according to each of their affidavits. Moreover, Bounds received payment from each of them in the District for their respective partnership shares.[5] Thus Bounds solicited and actively pursued business activities in the District which resulted in a contract executed in the District. In this regard we have noted that a nonresident's awareness of its agent's performance in the forum state is sufficient purposeful activity to meet due process requirements. *Rose v. Silver, supra* at 1372 n. 4. In this case the indications in the record that appellees were aware of and consented to Bounds' deliberate and voluntary activities in the District are sufficient to show that appellees purposely availed themselves of the privilege of conducting business in the District, and should reasonably have

anticipated being sued in this jurisdiction.[6] Accordingly, we hold that appellees transacted business in the District through an agent within the meaning of § 13–423(a)(1) and that their contacts with the District are sufficient to subject them to personal jurisdiction in this forum consistent with due process.

*Reversed.*

**5.** According to Whitbred's affidavit, he met with Mrs. Bounds on October 31, 1973 in the District and executed the limited partnership agreement. He delivered to her $10,000, receipt of which Mr. Bounds acknowledged that evening in the District when he encountered Whitbred. According to Smith's and Hewes' affidavits, they delivered payment for their

partnership shares directly to Bounds in the District.

**6.** In the event that appellees present additional facts materially different from those currently in the record, our decision does not preclude the trial court from reconsidering the question of jurisdiction. *See Rose v. Silver, supra* at 1372 n. 5.