Gail HUMMEL, Appellant,

v.

Robert KOEHLER, et al., Appellees.

No. 81-242.

District of Columbia Court of Appeals.

Submitted Sept. 22, 1982.

Decided March 3, 1983.

Gail Hummel, pro se.

Nathan Wasser, McLean, Va., for appellees.

Before NEWMAN, Chief Judge, KERN, Associate Judge, and GREENE, Associate Judge, Superior Court of the District of Columbia.*

GREENE, Associate Judge:

Appellees, members of a District of Columbia law firm, brought suit against appellant for unpaid bills in connection with services rendered to assist him in moving his lock manufacturing operations from Connecticut to Montevideo, Uruguay. The trial court entered judgment in favor of

* Sitting by designation pursuant to D.C.Code § 11-707(a) (1981).

appellees in the amount of $21,886.75, plus court costs. Appellant, seeking reversal of the judgment below, asserts that (1) he was not within the personal jurisdiction of the trial court; (2) there was insufficient evidence that appellees rendered services to him personally to support a judgment against him; and (3) the trial court improperly permitted appellees to file a ratification of the commencement of the action, thus avoiding dismissal on the ground that the action had not been brought in the names of the real parties in interest.[1] Finding no error, we affirm.

## I.

Testimony at trial disclosed that in September, 1973, appellant purchased the stock of Eagle Lock Corporation (hereinafter, "Eagle"). Eagle's factory was located in Terryville, Connecticut and the corporation owned equipment for manufacturing a variety of locks. At the time of the purchase, Eagle was involved in bankruptcy proceedings and contract disputes which in turn led to or were accompanied by other economic problems, including labor difficulties and foreclosure proceedings on its machinery and equipment. As part of his effort to resolve these problems, appellant formed

several other corporations which he wholly owned, and which borrowed money to purchase Eagle's equipment, lease the equipment, and obtain premises from which to conduct Eagle's business. By January 1, 1975, appellant and one of his new corporations, the Hummel Corporation, either owned or were leasing the entire assets of Eagle.

Nevertheless, the financial pressures on appellant and the Hummel Corporation increased. Consequently, in the spring of 1975 appellant began to investigate the possibility of moving his lock-making manufacturing operations to Montevideo, Uruguay, and he looked into the acquisition of a building there known as "Ferrosmalt." He approached Robert Koehler, an associate with appellees, to discuss the prospective relocation, and he prepared and sent to Koehler for review a proposal to be submitted, in turn, to appropriate Uruguayan authorities. Entitled "Industrial Development Project for Uruguay", the proposal listed the corporations owned by appellant and opened with a statement:

Please consider this proposal a request for permission and approval for Gail Hummel to acquire the Ferrosmalt Building to reopen and operate the manufac-

---

1. The trial court properly allowed appellees to file a ratification of the commencement of their action in order to avoid its dismissal on the ground that the action had not been brought in the names of the real parties in interest. Superior Court Civil Rule 17 provides in pertinent part:

(a) REAL PARTY IN INTEREST. Every action shall be prosecuted in the name of the real party in interest ... *No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.* (Emphasis added.)

Originally appellees' complaint had been titled, "*Robert Koehler, to the use of Patton, Boggs and Blow v. Gail Hummel, et al.*" When the trial court inquired of appellees' trial coun-

sel why the matter had been so captioned (*see, e.g., Fennell v. Bache,* 74 U.S.App.D.C. 247, 123 F.2d 905, *cert. denied,* 314 U.S. 689, 62 S.Ct. 359, 86 L.Ed. 551 (1941)), counsel responded and stated his willingness to amend the complaint to conform with the requirements of *Fennell, supra.* Thereupon the trial court allowed appellees 15 calendar days from December 16, 1980, to file a ratification of the commencement of their action or a joinder or substitution therein of all the individual partners. On December 29, 1980, appellees filed the appropriate document ratifying and confirming that they were the real parties in interest in the action and that it was brought with their knowledge and consent. Inasmuch as the ratification was filed timely and in compliance with Rule 17, the trial court properly permitted the filing, and appellant has made no claim or showing as to misjoinder, prejudice, or that appellees are not the real party in interest.

turing facilities and to establish an Eagle Lock padlock manufacturing, sales, and export business in the same buildings in Montevideo, Uruguay.

Koehler and other appellees reviewed the proposal. After telephone discussions and meetings with appellant, Koehler accompanied him to Uruguay to attempt to conclude the purchase of the Ferrosmalt Building and the relocation of appellant's operations to Uruguay. They left the United States on April 30, 1975, and spent 12 days in Uruguay. During the trip appellant acquired an option to purchase the Ferrosmalt Building assets in his own name and, after a meeting with the building's owners, decided to restructure and resubmit his proposal in a form more acceptable to Uruguayan authorities.

Appellant and Koehler then returned to the United States where appellees, in the District of Columbia, prepared a second proposal for appellant's acquisition of the Ferrosmalt Building. Upon completion of the proposal appellant and Koehler returned to Uruguay to complete the purchase. During their second visit, appellant signed contracts by which he personally acquired the Ferrosmalt assets.[2]

Appellees forwarded to appellant bills totaling $22,886.75 for services rendered by appellees on appellant's behalf in the Uruguayan matter. Appellant paid $1,000 and promised to pay the balance, but failed to do so. Consequently, appellees filed suit against appellant, resulting in the trial and judgment below.[3]

II.

Appellant's assertion that he was not within the personal jurisdiction of the trial court (apparently because he was a lifelong resident of the State of Arizona) fails for two reasons.

First, on the initial day of trial of this matter appellant filed an "Amended Answer and Counterclaim." Appellees consented to the filing of the counterclaim but generally denied both the answer and counterclaim. Appellees thereupon asked the trial court to rule that, by virtue of having filed the counterclaim, appellant waived any jurisdictional defenses he might have had and subjected himself to the jurisdiction of the Court. The trial court so ruled.

▇ Having attempted to invoke the jurisdiction of the Superior Court against appellees, appellant is himself now bound by the Court's jurisdiction. "[B]y setting up [his] counterclaim the [appellant] became a plaintiff [and] in ... turn, invoked the jurisdiction of the court in the same action and by invoking submitted to it." *Merchants Heat & Light Co. v. J.B. Clow & Sons,* 204 U.S. 286, 289, 27 S.Ct. 285, 286, 51 L.Ed. 488 (1907). *See also Northbranch Products, Inc. v. Fisher,* 109 U.S.App.D.C. 182, 186, 284 F.2d 611, 615 (1960), *cert. denied,* 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961).[4]

Second, even in the absence of appellant's having filed a counterclaim, the trial court properly invoked jurisdiction over appellant

---

2. Appellant testified at trial that he had not intended to acquire the Ferrosmalt assets in his own name. The trial court concluded otherwise, and the record below discloses no basis upon which the trial court's determination should be disturbed.

3. Because other portions of appellees' billings remained unpaid by two of the corporate entities owned by appellant and for which services had been performed by appellees, those two corporations were included in the suit below. They failed to appear, and defaults were entered against them.

4. In *Northbranch Products, supra,* the circuit court, in concluding that jurisdictional defenses were waived where a defendant filed an answer and counterclaim, found it to be immaterial whether the counterclaim was compulsory or permissive. However, at least one commentator has suggested that it is the better view that jurisdictional defenses are waived only by the assertion of a permissive counterclaim. *See* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL, § 1397 (1969 ed.).

It is unnecessary for this court to resolve the issue inasmuch as appellant's counterclaim, charging that appellees' suit was maliciously motivated and seeking punitive damages, arose

under D.C.Code § 13–423 (1981). That statute provides in pertinent part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia; . . .

■ It is well-settled in this jurisdiction that "some affirmative act" by the defendant to bring himself within the Court's jurisdiction and to establish "minimum contacts" is necessary to meet the "transacting-any-business" subsection of the District of Columbia's longarm statute, *Cohane v. Arpeja California, Inc.,* 385 A.2d 153, 158 (D.C.1978). This court has adopted the view that the District's longarm statute "contemplates the exercise of personal jurisdiction to the fullest extent permissible under the due process clause", and has concluded that "the 'transacting any business' provision is coextensive with the due process clause." *Mouzavires v. Baxter,* 434 A.2d 988, 991, 992 (D.C.1981) (en banc). *See also Smith v. Jenkins,* 452 A.2d 333, 336 (D.C. 1982).

■ Nevertheless, there is no easily administered test to be applied by which to measure whether a defendant's contacts are sufficient to sustain jurisdiction. Rather, in each case the trial court must assure that the defendant's contacts are such that the maintenance of the suit in the forum state "does not offend 'traditional notions of fair play and substantial justice.' " *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), *quoting International Shoe Co. v.*

*Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). As we observed recently in *Smith v. Jenkins, supra,* at 336–7,

. . . In this regard, it is critical that the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. 297 [100 S.Ct. at 567]. . . . Such a connection, of course, would be achieved if "there [were] some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." [*Citing Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).]

■ We conclude that appellant's contacts with the District of Columbia are clearly sufficient to subject him to jurisdiction here. Not only did those contacts with appellees, a District of Columbia law firm, span more than a year and involve a variety of tasks, but the record reflects that appellant was present in the District of Columbia on at least three separate occasions for the purpose of furthering his business with appellees. Thus, unlike the defendant in *Mouzavires,* appellant not only had "contacts with the District of Columbia other than [his] utilization of [appellees'] services", but he also "entered the District of Columbia to negotiate with [appellee Koehler and] to work with him." *Compare Mouzavires v. Baxter, supra,* dissenting opinion, 434 A.2d at 1001–1002. *A fortiori,* appellant's contacts within the District of Columbia were

from appellees' law suit itself and not from the transaction which formed the basis for appellees' original law suit. Consequently, appellant's counterclaim need not have been pleaded below, but could have been brought as an independent action. Clearly, under such circumstances it was a permissive counterclaim under the rules of the Superior Court. *See* Super.Ct. Civ.R. 13(a) and (b) (defining a compulsory

counterclaim as one which *"arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction" (emphasis added), and a permissive counterclaim as one "not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim . . .").

sufficient to establish that he was transacting business here within the meaning of the D.C.Code § 13–423(a)(1) (1981). *Compare Mouzavires v. Baxter, supra,* 434 A.2d at 996–997. *See also Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 811 (D.C.1976) ("Even a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here.")

The record below discloses that appellant visited the District of Columbia on business-related matters to obtain appellees' assistance, was present here on several occasions, and derived economic benefit from his employment of appellees. This course of conduct provided an ample basis for the trial court's finding that appellant transacted business in the District of Columbia for purposes of invoking jurisdiction over him under D.C.Code § 13–423(a)(1) (1981).

### III.

Appellant also appears to assert that the judgment of the trial court against him was unsupported by any testimony or evidence that appellees performed services for appellant individually, rather than for the various corporations wholly owned by appellant.[5] In fact, substantial evidence was introduced to justify the trial judge's finding that "under all of the circumstances involved", appellees' services with regard to the Uruguayan project were performed for appellant "as an individual." When appellant first contacted appellee Koehler concerning the Uruguay project, he submitted a proposal indicating his interest in personally acquiring the Ferrosmalt assets. Subsequently, he obtained an option to purchase the assets in his own name. He later exercised this option and Ferrosmalt was acquired by him personally. Moreover, the testimony of appellee Koehler, apparently credited by the trial judge, was to the effect that appellant never disavowed any of appellees' bills and told Koehler that appellant would pay them. In this regard it is of particular significance that appellant's only payment to appellees in response to their bill relating to the Uruguay project was drawn on his personal account.

In cases tried to the court, this court repeatedly has recognized that while we may review both as to the facts and the law, a judgment will not be set aside "except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." *See* D.C.Code § 17–305(a) (1981); *Remco Business Systems, Inc. v. Hollowell,* 430 A.2d 534, 535 (D.C.1981); *Bell v. District of Columbia Department of Correction, et al.,* 403 A.2d 330, 332, n. 4 (D.C.1979). Consistent with this rule, this court will not disturb the findings of the trial court unless those findings are clearly erroneous. *Hagans Management Co., Inc. v. Nichols,* 409 A.2d 179, 182 (D.C. 1979); *Lee Washington, Inc. v. Washington Motor Truck Transport Employees Health and Welfare Trust,* 310 A.2d 604, 606 (D.C. 1973). Here, the findings of the trial court are supported on the record and accordingly may not be reversed on appeal. *Hoffheins v. Heslop,* 210 A.2d 841, 843 (D.C.1965).

*Affirmed.*

---

5. Appellant also claims that the trial judge was prejudiced in favor of appellees and misconstrued the theory of appellees' case. There is no evidence in the record to support either of appellant's contentions in this regard, and we find them wholly without merit.