**Joseph TREROTOLA and Eastern Conference of Teamsters, Appellants,**

**v.**

**John Joseph COTTER, Appellee.**

**No. 90–211.**

District of Columbia Court of Appeals.

Argued Feb. 4, 1991.

Decided Dec. 20, 1991.

---

Patrick J. Szymanski, with whom Dianna M. Louis, Washington, D.C., was on the brief, for appellants.

Roy D. Snyder, with whom James J. Bierbower, Washington, D.C., was on the brief, for appellee.

Before FERREN and FARRELL, Associate Judges, and BELSON,* Senior Judge.

FERREN, Associate Judge:

In this employment contract dispute a jury awarded plaintiff-appellee, John Joseph Cotter, $8,500 and interest against his former employer, defendant-appellant Eastern Conference of Teamsters, and its international director, defendant-appellant Joseph Trerotola. The jury found that appellants had breached a unilateral, implied-in-fact contract in refusing to pay Cotter a retirement gift. This appeal focuses on whether the trial court erred in refusing to dismiss the complaint for lack of personal jurisdiction. Concluding that the court did err in this respect, we reverse and remand with directions to dismiss for want of jurisdiction.[1]

---

* Judge BELSON was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on July 24, 1991.

## I.

The Eastern Conference of Teamsters employed Cotter from October 29, 1956, until July 31, 1977, most recently as the representative of its Automotive and Petroleum Trade Division. The Eastern Conference is a labor organization chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. It is comprised of local unions and joint councils in fifteen eastern states and the District of Columbia. From October 1956 until August 1971, the Eastern Conference was located in the District at 100 Indiana Avenue, N.W. In August, 1971, the Eastern Conference moved its offices to Bethesda, Maryland.

Cotter alleges that in 1973 Joseph Trerotola, the international director of the Conference, implemented a custom and practice of granting each retiring employee of the Conference a bonus or "gift" of a week's pay for each year of service, not to exceed three months' pay, in addition to formal retirement benefits. Michael Miles, the Conference's Comptroller and the administrator of its Retirement Plan, testified that the Conference had formulated the retirement gift plan to standardize the gift employees normally would receive upon leaving Conference employment. The employees commonly referred to this gift as "severance pay." Between 1973 and the spring of 1977, ten employees retired from the Conference, and each received a retirement gift based on the specific formula. During this period, at least two employees left the Conference to work elsewhere, including one who—like Cotter—went to work for the International union. While neither received a retirement gift based on the formula, each was arguably in a different category from Cotter because neither—unlike Cotter—was eligible for Conference retirement benefits. Everyone who left Eastern between 1973 and 1977 and was

---

1. Appellants also argue that the action was untimely filed and that the evidence is insufficient to support a finding of breach of contract. Because we conclude the trial court lacked personal jurisdiction, we do not reach these issues.

eligible for retirement benefits received a retirement gift based on the formula.

In August 1977, Cotter left the Conference to become assistant to the President of the International Brotherhood of Teamsters, Frank Fitzsimmons. Miles told Cotter that Cotter could not receive formal retirement benefits under the Conference's Retirement Plan (not to be confused with the formula retirement gift) until he retired from the International Teamsters. Cotter, therefore, did not file for retirement benefits when he left the Conference to join the International.

In September 1977, Cotter asked Trerotola about his retirement gift; Trerotola replied that he would look into the matter and get back to him. Trerotola did not do so. About six weeks later, Cotter again asked Trerotola about a retirement gift. Trerotola replied: "I didn't look into it. I'll get back to you." Again, Cotter heard nothing from him. In November 1977, Cotter again questioned Trerotola and was told that Trerotola had not looked into a retirement gift but would get back to him. Trerotola never did so.

Cotter retired from the International in August 1985. Just before doing so, in July 1985, Cotter asked Trerotola about the retirement gift from the Conference. Trerotola replied that two employees had left the Conference without receiving a retirement gift. Cotter pointed out, however, that those employees had left several years before implementation of the gift plan in 1973. Trerotola responded that he would talk to Miles about it. Some time later, Miles told Cotter that he was not involved in Cotter's retirement gift dispute. Cotter immediately called Trerotola, who told him that because he had not retired directly from the Conference but, instead, had taken other employment, Cotter was not entitled to a retirement gift. Cotter then wrote Trerotola, asking for a ruling by the Eastern Conference Policy Committee. Trerotola denied his request. Finally, in a letter dated November 13, 1985, Trerotola told Cotter that the Conference would not give him a retirement gift.

Cotter filed suit against the Eastern Conference and Trerotola in Superior Court on September 25, 1986, alleging that they had breached the custom and practice of providing a retirement gift. On October 20, the Conference and Trerotola moved to dismiss for lack of personal jurisdiction. The trial court denied the motion without opinion on January 13, 1987. At Trerotola's deposition, Cotter learned that despite advice from Miles to the contrary at the time, he could have received retirement benefits under the Conference's Retirement Plan if he had requested them in 1977 when he left the Conference. With this discovery, Cotter filed suit in the United States District Court for the District of Maryland to recover benefits under the Conference's Retirement Plan (as distinguished from the smaller retirement gift or severance pay at issue in this case). After a two day bench-trial, the District Court awarded Cotter $137,697. That judgment was affirmed. *See Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d 424 (4th Cir.1990).

The present case was tried before a Superior Court jury on March 8–10, 1989, before Judge Graae. The jury deadlocked, five votes to one, for dismissal. A second jury heard the case on November 16–20, 1989. At this trial, Cotter was allowed to introduce in evidence the Maryland decision entitling him to retirement benefits upon leaving the Conference in 1977. The defendants moved for a directed verdict which the trial court denied. The jury awarded Cotter $8,500 with interest from July 31, 1977. On December 1, 1989, the defendants moved for judgment notwithstanding the verdict or a new trial, both of which the trial court denied on January 24, 1990. The Conference and Trerotola filed a timely appeal.

## II.

The threshold—and dispositive—question is whether the Superior Court had personal jurisdiction over the Conference and Trerotola. Personal jurisdiction depends on: (1) "the presence of reasonable notice to the defendant that an action has been brought"; and (2) "a sufficient con-

nection between the defendant and the forum state as to make it fair to require defense of the action in the forum." *Rose v. Silver,* 394 A.2d 1368, 1370 (D.C.1978) (quoting *Kulko v. Superior Court of California,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978)), *reh'g denied,* 398 A.2d 787 (1979).

The trial court's jurisdiction theoretically could be derived from D.C.Code §§ 13–334, –422, or –423 (1989). Cotter does not rely on § 13–334, which confers jurisdiction, after proper service of process in the District, upon any "foreign corporation which carries on a consistent pattern of regular business activity within the jurisdiction." *AMAF Int'l Corp. v. Ralston Purina Co.,* 428 A.2d 849, 850 (D.C.1981); *see Price v. Griffin,* 359 A.2d 582, 586 (D.C.1976) ("any continuing corporate presence in the forum state directed at advancing the corporation's objectives is sufficient for the exercise of jurisdiction" under the "doing business" provision of § 13–334(a)). Cotter does not claim there was service of process in the District or that the Conference has sufficient activity in the District to sustain a claim of jurisdiction under § 13–334.

Nor does Cotter rely on § 13–422, as the Conference is not "domiciled in, organized under the laws of, or maintaining ... its principal place of business in the District of Columbia." D.C.Code § 13–422. Miles stated, in an affidavit attached to appellants' motion to dismiss for lack of personal jurisdiction, that the Conference "has its offices and place of business in Bethesda, Maryland," and "maintains no offices or facilities in the District of Columbia." There is nothing of record, nor has Cotter proffered, that the Conference was organized under the laws of the District. Jurisdiction, therefore, if at all, must come under § 13–423, the long-arm statute.

■ "A court may properly assert personal jurisdiction over a nonresident [1] where a statute authorizes service of process and [2] where such service is consistent with due process." *Smith v. Jenkins,* 452 A.2d 333, 336 (D.C.1982); *see Mouzavires v. Baxter,* 434 A.2d 988, 990 (D.C.

1981) (en banc), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982). The long-arm statute, § 13–423, provides in relevant part:

(a) A District of Columbia court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

\*    \*    \*    \*    \*    \*

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him [or her].

We have noted that "[u]nder § 13–423(a)(1), less of a nexus between the defendant and the District of Columbia is required for a finding of jurisdiction than would be required under the 'doing business' test used to determine corporate presence" under § 13–334. *Cohane v. Arpeja–California, Inc.,* 385 A.2d 153, 158 (D.C.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978). Appellant does not dispute that the Conference's conduct satisfies § 13–423(a)(1); clearly the Conference has transacted "any business" in the District. During the time period when Cotter worked for the Conference, it represented local unions with approximately 13,000 members. Cotter himself made frequent trips to the District (as well as to other jurisdictions) to transact business for the Conference, including assistance to local unions in organizing and negotiating labor agreements and in handling labor grievances. The question, then, is whether, in the words of § 13–423(b), Cotter's "claim for relief [arose] from acts enumerated in" any subsection of § 13–423—in this case in § 13–423(a)(1). *See Cohane,* 385 A.2d at 158. Put another way, § 13–423(b) bars claims "unrelated to the acts forming the basis for personal jurisdiction." *Willis v. Willis,* 211 U.S.App.D.C. 103, 106, 655 F.2d 1333, 1336 (1981); *see Cohane,* 385 A.2d at 158.

For proper jurisdiction, therefore, the long-arm statute requires that the claim raised have a discernible relationship to the "business" transacted in the District. Without such a relationship, asserted jurisdiction exceeds the limits of the due process clause of the Constitution. *See id.; Smith*, 452 A.2d at 336; *see also International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). To justify personal jurisdiction, due process requires "certain minimum contacts" between the nonresident and the forum. *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). A nonresident's "contacts with the forum must be 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Smith*, 452 A.2d at 336 (quoting *World-wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564). The critical test is whether the nonresident's "conduct and connection with the forum state are such that he [or she] should reasonably anticipate being haled into court there." *World-wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, *quoted in Smith*, 452 A.2d at 336.[2]

We must therefore answer the question whether Cotter's claim for a retirement gift based on an implied-in-fact contract can be said to have arisen out of the Conference's activities in representing unions in the District. For proper jurisdiction, the Conference's contacts with the District must have been "of such a quality and nature that they manifest[ed] a deliberate and voluntary" anticipation of litigation here over retirement gift (or severance pay) contracts. *Mouzavires*, 434 A.2d at 995. We do not believe they did. The Conference cannot reasonably be said to have anticipated being haled into a court in the District of Columbia to litigate a Maryland retirement "gift" contract as a result of sending Conference representatives to the District to work with unions there.

It is undisputed that the Eastern Conference headquarters were located in the District for most of the time Cotter was in its employ. It is also undisputed that after the Conference's headquarters were relocated to Maryland in August 1971, Cotter continued to conduct Conference business in the District. The necessary due process focus, however, is on the acts and reasonable expectations of the Eastern Conference in establishing its relatively recent "custom and practice" of giving its employees an additional "gift upon retirement." The implied-in-fact "gift" contract was entered into in Maryland in 1973. It is true that the "gift" would not have been available to Cotter but for his employment activities in this jurisdiction and elsewhere over the years that culminated in his retirement; but, the Eastern Conference formed the implied contract with certain retiring employees, including Cotter, in Maryland, based on the fact of retirement alone, altogether independent of any employee's activities in any particular place, whether in the District or elsewhere.[3] If an Eastern

---

**2.** The plaintiff has the burden of proving the necessary jurisdictional facts. *See, e.g., McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 56 S.Ct. 780, 781, 80 L.Ed. 1135 (1936); *Security Bank, N.A. v. Tauber*, 347 F.Supp. 511, 513 (D.D.C.1972).

**3.** In his dissent, Judge Belson agrees that the Eastern Conference's promise to confer a retirement gift was the result of an oral implied-in-fact contract. *Post* at 68. He argues nonetheless, that because the employment agreement was already in place, the Eastern Conference's subsequent unilateral promise was, "necessarily, an additional term of the existing employment contract established in the District to be performed in large part in the District." *Id*. Judge Belson, however, can cite nothing from the record or the caselaw to support his premise that the oral, unilateral, implied-in-fact contract establishing a severance gift for the first time in 1973 was a contractual modification of the long-standing written, bilateral employment contract.

Cotter himself does not claim that he understood the Eastern Conference's unilateral promise to be a new term of his employment contract. Cotter in fact alleged in his complaint that the severance gift was distinct from the formal retirement benefits he was entitled to receive under his employment contract (which were the subject of a separate lawsuit). In his complaint he stated that the implied-in-fact contract for the severance gift was a *"custom and practice* ... established whereby all full-time employees received as a retirement *bonus* three months of wages (*"severance pay"*) *after they departed* from full-time employment and com-

Conference employee became eligible to receive retirement benefits, then the Eastern Conference would unilaterally grant that retiring employee an additional severance gift. There was no "affirmative act" by appellees creating or relating to that gift which had consequences in the District that can be said to have brought the Eastern Conference "within [the District of Columbia to] establish[ ] minimum contacts" with respect to Cotter's claim. *Cohane*, 385 A.2d at 158 (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

We cannot agree with our dissenting colleague that the facts in this case "bear more than a passing similarity," *post* at 68, to the facts in *Cohane* establishing jurisdiction under the long-arm statute. In *Cohane*, the plaintiff's claim (for sales commissions) against the nonresident defendant arose directly out of the defendant's contractual activities with a legal situs in the District (defendant's sale of goods to District residents). Here, however, Cotter's claim does not arise out of appellees' activities or obligations in the District; it arises out of the Eastern Conference's contractual obligation to Cotter to give him a severance bonus because of retirement, wherever he may have worked.[4] Nor is this a case where Cotter is suing nonresident defendants on a contract consummated, executed, and having direct consequences in the District such that we can say the Eastern Conference and Trerotola have invoked the benefits and protections of the District's laws. *See Mouzavires*, 434 A.2d at 996–98 (relied upon by dissent, *post* at 69).

Judge Belson apparently concludes that, because Cotter engaged in transactions in the District for the Eastern Conference over the years, any retirement pay—including the gift here—must be allocable in part to those transactions since they comprised some of the work for which retirement benefits accrued. We believe this theoretical wedding of retirement benefits to particular transactions in this jurisdiction—assuming an accountant could make a defensible allocation under the particular gift formula—is simply too attenuated a methodology for concluding that a retirement gift after many years of service is traceable to particular, identifiable business transactions here justifying jurisdiction over "claim[s] for relief arising from acts enumerated in" the long-arm statute. D.C.Code § 13–423(b). Moreover, we cannot say that the Eastern Conference, by unilaterally choosing to provide certain employees with a supplementary retirement gift—a bonus—based solely on the fact of retirement, not on particular business activities, committed an affirmative act related to its "*contractual* activities" in the District. *Post* at 69 (quoting *Mouzavires*, 434 A.2d at 992) (emphasis in dissent).

We therefore conclude that this case is distinguishable from those in which we have held that plaintiff claims were based on defendant acts relating to the nonresident defendant's District business. *See, e.g., Cohane*, 385 A.2d at 159 (claim for sales commissions, some of which based on District transactions, sufficiently related for jurisdiction); *Smith*, 452 A.2d at 337 (claim derived from partnership activities in District); *see also Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 207, 207 U.S.App.D.C. 375, 382 (1981) (claim for cancellation of wine registration trademark related to sale of wine in District). In sum, Cotter's claim—breach of a contract to pay a severance "gift" upon retirement—does not have the required relationship to the Conference's business activities in the District to meet the due process requirements for personal jurisdiction. *Cf. Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. 1979) (no link between fuel deliveries to District and Maryland traffic accident suf-

---

menced receiving retirement income...." (emphasis added). Indeed, one of the main factual issues for the jury to decide at trial was whether an implied-in-fact contract for the severance gift existed at all, not whether the original employment contract had been modified.

4. Furthermore, unlike the case at hand, the nonresident defendant in *Cohane* did not deny that the plaintiff's claim arose, in part, out of the defendant's contractual activities in the District. *See Cohane*, 385 A.2d at 159.

ficient to subject Maryland corporation to District jurisdiction); *Willis*, 211 U.S.App. D.C. at 106, 655 F.2d at 1336 (defendant's District real estate interests insufficient link for conversion and fraud claims); *In re Mid–Atlantic Toyota Antitrust Litigation*, 525 F.Supp. 1265, 1274 (D.D.C.1981) (antitrust claim unrelated to nonresident's normal District business). If we were to find jurisdiction here, presumably Cotter or any other Conference employee could sue the Conference on similar grounds in a retirement gift dispute under the long-arm statute of any jurisdiction where the Conference has no presence other than traveling consultants for local unions. That would far exceed the bounds of due process. As we have said in a similar context:

> since the claim must relate to the particular act or transaction forming the basis for personal jurisdiction, D.C.Code 1973, § 13–423(b), and the claim here did not, the judgment must be and is reversed because the court lacked jurisdiction.

*Berwyn*, 399 A.2d at 80.

*Reversed and remanded with directions to dismiss.*

BELSON, Senior Judge, dissenting:

I respectfully disagree with the majority's holding that the trial court lacked personal jurisdiction over appellant, the Eastern Conference of Teamsters. The issue is whether the Conference reasonably could have anticipated being brought into court in the District of Columbia to litigate a claim of its former employee, appellant Cotter, that he was entitled to a supplemental retirement benefit. I begin by identifying the most salient facts.

—In 1956, Cotter, a District of Columbia resident, entered into an employment agreement with the Conference, which at the time had its headquarters in the District of Columbia.

—In his job, Cotter worked out of the Conference's District of Columbia offices, and frequently transacted business for the Conference in the District of Columbia.

—In 1971, after Cotter had worked for the Conference for 15 years out of its District of Columbia offices, the Conference moved its offices a short distance across the District line to Bethesda, Maryland. Cotter, still a District resident, continued to transact business frequently for the Conference in the District of Columbia while working out of its Bethesda offices.

—In 1973, the Conference entered into oral agreements with Cotter and certain other employees to provide for a supplemental retirement benefit based upon the number of years of service.[1]

—Each employee's supplemental retirement benefit was to be calculated on the basis of the equivalent of one week's pay for each year the employee had worked, up to a total of three months' or thirteen weeks' pay.

—Cotter left the Conference's employ to work for the International Brotherhood of Teamsters in 1977.

—Of the thirteen years of work upon which Cotter bases his claim for the retirement benefit, he spent at least seven years working out of the Conference's District headquarters. He worked out of the Bethesda, Maryland, headquarters for only six years. Even during those six years, Cotter worked for the Conference frequently in the District of Columbia assisting local unions that were members of the Conference. The local unions in the District of Columbia had approximately 13,000 members. Cotter also worked for the Conference in other jurisdictions, but the record does not disclose whether his work in those jurisdictions was frequent.

The Conference entered into an arrangement to give Cotter a supplemental retirement benefit that was in essence an additional term of an employment agreement between Cotter and the Conference that had been entered into in the District of Columbia. This course of contractual activity, particularly where the additional term related to services already rendered

---

1. Cotter refers to this benefit as "severance pay." The Conference refers to it as a "gift," a misno-

mer if it was called for by a contract that gave Cotter an enforceable right.

and to be rendered substantially in the District of Columbia, fell well within the reach of the "transacting any business" provision of the District's long-arm statute, D.C.Code § 13–423(a)(1). Moreover, the very employment activities upon which Cotter based his claim to the supplemental retirement benefit were performed in substantial part within the District and were themselves transactions of business in the District that provided a second and independent basis for the assertion of long-arm jurisdiction. Accordingly, I conclude that the courts of the District of Columbia may exercise personal jurisdiction over the Conference in this case.

Analyzing whether the forum court can properly exercise personal jurisdiction over a defendant outside the jurisdiction and not otherwise shown to be subject to the court's processes is conceptually a two-step inquiry: the court must look both to the District of Columbia long-arm statute and to the provisions of the Due Process requirement of the Fifth Amendment. The District of Columbia long-arm statute provides that a District of Columbia court may exercise jurisdiction over a non-resident defendant who transacts any business in the District, and we have held that this jurisdictional reach is coextensive with due process; *i.e.*, our statute "permits the exercise of personal jurisdiction to the fullest extent of the Due Process Clause." *Mouzavires v. Baxter*, 434 A.2d 988, 991 (D.C.1981) (en banc), *cert. denied*, 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982); *see also Hummel v. Koehler*, 458 A.2d 1187, 1190 (D.C. 1983).[2] "Thus, we have merged the [two] steps into a single due process analysis," *Smith v. Jenkins*, 452 A.2d 333, 336 (D.C. 1982); *see also Mouzavires, supra*, 434 A.2d at 992. Although this approach would appear to provide simplicity, it remains true that there is no easily administered test by which to determine whether a defendant's contacts are sufficient to sustain jurisdiction.

What is clear, however, is that the only nexus required between the "transacting any business" subsection of the District's long-arm statute and a nonresident defendant is "some affirmative act" by the defendant to bring itself within the court's jurisdiction and to establish "minimum contacts." *Cohane v. Arpeja–California, Inc.*, 385 A.2d 153, 158 (D.C.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978) (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); *see Hummel, supra*, 458 A.2d at 1190; *International Shoe Co. v. Washington, supra* note 2, 326 U.S. at 310, 66 S.Ct. at 154. In each case the court must assure that the defendant's contacts are such that the maintenance of the suit in the forum state "does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe, supra* note 2, 326 U.S. at 316, 66 S.Ct. at 158). Although it is not acknowledged in the majority's opinion, it is well-settled in this jurisdiction that

> the "transacting any business" provision embraces those *contractual* activities of a nonresident defendant which cause a consequence here.... Moreover, to fall within the purview of § 13–423(a)(1), a nonresident defendant need not have been physically present in the District.

*Mouzavires, supra*, 434 A.2d at 992 (emphasis added); *see, e.g., Rose v. Silver*, 394 A.2d 1368 (D.C.1978); *Cohane, supra*, 385 A.2d at 159.

In interpreting the scope of § 13–423(b), which provides

> [w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him [or her],

the majority states that this subsection "bars claims 'unrelated to the acts forming the basis for personal jurisdiction.'" (Majority at 63) (quoting *Willis v. Willis*, 211

---

**2.** Under § 13–423(a)(1), less of a nexus between the defendant and the District is required for a finding of jurisdiction than would be necessary under the "doing business" test used to deter-

mine corporate presence. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

U.S.App.D.C. 103, 106, 655 F.2d 1333, 1336 (1981)). This court, however, has construed the statutory language in a way that seems to connote a more inclusive approach on issues of jurisdiction, stating that the language is "meant to prevent 'the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction.'" *Cohane, supra,* 385 A.2d at 158 (quoting *Malinow v. Eberly,* 322 F.Supp. 594, 599 (D.Md.1971)).[3] Furthermore, once the claim is related to acts in the District, the long-arm statute does not require that "the scope of the claim be limited to activity within this jurisdiction." *Id.* at 159.

The facts upon which this court based its holding that the Superior Court had jurisdiction over the party sued in *Cohane* bear more than a passing similarity to the facts here. *Id.* Cohane, a resident of Delaware, was employed as an independent agent by Arpeja–California, Inc., a California corporation which manufactured women's apparel. Cohane was assigned to sell Arpeja's clothing in the area of eastern Pennsylvania, Maryland, Delaware, and Washington, D.C. Cohane brought suit against Arpeja in the District of Columbia, claiming that pursuant to his employment contract, as orally modified, he was entitled to certain commissions which Arpeja failed to pay. On these facts, *i.e.,* that Arpeja sold goods to clothing stores in the District of Columbia, received a benefit from those sales, and Cohane's claim for commissions arose, at least in part, out of sales in the District, this court held that it could exercise personal jurisdiction over Arpeja without offending due process.

Cohane's claim for the commissions through the orally modified contract can be analogized to Cotter's claim for the retirement benefit through the "implied-in-fact" contract in the instant case. Analogizing further, the Conference provided services to member unions in the District through Cotter and presumably discharged an obligation to those unions by doing so, and also received a benefit from rendering this service. Thus, Cotter's claim for the retirement benefit arose, at least in substantial part, out of his transacting business for the Conference in the District. As I have pointed out, Cotter was frequently performing work for the Conference during this entire thirteen years upon which his claim is based, and during the first seven of those years, worked out of the Conference's District offices.

To determine the jurisdictional issue, the court must first consider whether the Conference transacted any business in the District within the meaning of § 13–423(a)(1), and then decide whether Cotter's breach of contract claim for the retirement benefit "bear[s] some relationship" to this activity. *Cohane, supra,* 385 A.2d at 158. There is no doubt that the Conference was, for twenty-one years, frequently transacting business in the District through Cotter himself. Also, the Conference and Cotter entered into and executed an employment contract while the Conference maintained its offices in the District.

It is true that the Conference made the oral "implied-in-fact" contract for the retirement "benefit" after it moved its office to Maryland.[4] It does not follow, however, as the majority posits, that this "implied-in-fact" retirement benefit contract was an entirely independent Maryland contract. To the contrary, the retirement benefit arrangement was, necessarily, an additional term of the existing employment contract established in the District to be performed

---

3. The court in *Cohane, supra,* 385 A.2d at 159, asserted that this view is supported by the legislative history of § 13–423, which is modeled after the Uniform Interstate and International Procedure Act. The court relied on the note of the Commissioners on Uniform State Laws which stated in reference to the Uniform Act counterpart of § 13–423:

> The concept of cause of action or claim for relief should be broadly construed to cover an entire transaction so that, when possible, the entire dispute may be settled in a single litigation. Subdivision (b) is designed to prevent assertion of independent claims *unrelated to any activity described* in subdivision (a) of § 103.

*Id.* (quoting 13 U.L.A. § 103 at 288 (1975) (emphasis in original)).

4. For the limited purpose of reaching the threshold issue of jurisdiction, we accept Cotter's contentions in this regard.

in large part in the District. The majority opinion acknowledges that Cotter and the Conference had a "longstanding written bilateral, employment contract" and that, in 1973, the Conference established an "oral, unilateral, implied-in-fact contract [for] a severance gift" for Cotter and certain other employees. [Majority at 64, note 3] The majority opinion ignores, however, the obvious: that such a retirement benefit can be conferred only upon one who already has an employment agreement with the Conference. Without the original employment contract, such a supplemental retirement benefit would have been meaningless. In my view, it is reasonable to consider the entirety of the Conference's contractual dealings with Cotter as an employee in determining whether the Conference transacted business within the District from which Cotter's claim arises. It scarcely can be said that the asserted claim does not "bear some relationship" to contractual activity in the District. *See Cohane, supra,* 385 A.2d at 158. Thus, the Conference's dealings with Cotter within the District provided an adequate basis for personal jurisdiction over the Conference.

A second, conceptually distinct, and independently adequate basis for jurisdiction arose from the fact that a large part of the actual work over a thirteen-year period on which Cotter bases his claim for supplemental retirement benefit was performed in the District of Columbia. He spent the first seven of those years working out of the Conference's District headquarters and during that time was frequently engaged in providing services to local unions and thus transacting business within the District of Columbia. Even after the Conference moved its headquarters to nearby Maryland, Cotter frequently worked in the District serving the local unions. Thus, Cotter's claim bears a strong relationship to business Cotter transacted for the Conference in the District, and this too serves as a basis for the assertion of personal jurisdiction.

The dispositive issue is not, as the majority asserts, whether the Conference could reasonably be said to have anticipated being haled into court in the District to liti-

gate as "a result of sending Conference representatives to the District to work with unions there." (Majority at [65]) Rather, the issue is whether the Conference could reasonably have anticipated being haled into court in the District of Columbia to litigate a claim arising out of an additional term to an employment contract with Cotter which was originally entered into in the District, which was performed in large part by Cotter's transactions of business for the Conference in the District, and which gave rise to a claim for benefits the preponderance of which were earned while the Conference's offices were in the District. The very statement of the issue demonstrates that there are affirmative acts by the Conference that have a nexus with Cotter's claims. The *"contractual* activities of [the] nonresident defendant," and its breach which "cause[d] a consequence here," *Mouzavires, supra,* 434 A.2d at 992 (emphasis added), provided an adequate basis for jurisdiction. In addition, Cotter's actions in frequently transacting business in the District for the Conference over the course of 13 years provided an independent basis for jurisdiction.

Under the circumstances present here, the Conference should reasonably have anticipated being brought into a court in the District to litigate the retirement benefit in question. Therefore, the courts of the District of Columbia can exercise personal jurisdiction over the Conference in the instant case. I dissent.

**In re J.A. & L.A., Appellees.**