Geoffrey J. CHARLTON, Appellant,

v.

Jimmy MOND and Miguel
Mesquita, Appellees.

No. 08–CV–432.

District of Columbia Court of Appeals.

Argued Nov. 3, 2009.
Decided Jan. 21, 2010.

Walter T. Charlton, for appellant.

Robert K. Epstein, for appellee Jimmy Mond.

Christopher M. O'Connell and John C. Pitts, with whom Zeno B. Baucus was on the brief, Washington, for appellee Miguel Mesquita.

Before REID and KRAMER, Associate Judges, and KING, Senior Judge.

KRAMER, Associate Judge:

Geoffrey Charlton appeals the dismissal of appellee Mond for lack of personal jurisdiction, as well as a grant of summary judgment on his contract and civil conspiracy claims against appellee Mesquita. Because Charlton fails to identify any error by the trial court or present a legal basis to justify reversal on any other ground, we affirm.

## I. Factual Summary

This case comes before us after a six-year long course through the Superior Court. In 2002, appellee Mond engaged appellant Charlton to renovate his home. Appellee Mesquita worked as Charlton's carpentry sub-contractor on various projects, including the Mond home. Charlton fired Mesquita on July 10, 2002. Mond terminated Charlton's contract in September 2002. Charlton then sued Mond and Mesquita for breach of contract, civil conspiracy and defamation. He alleged that Mesquita spread "hateful false information ... for the purpose of destroying [Charlton's] contractual relationship[s]," first to Mond and later, in conjunction with Mond, to Charlton's other business associates.

Mond, a Maryland resident, filed a motion to dismiss for lack of personal jurisdiction, which the trial court denied. Thereafter, Mond filed a counterclaim, along with a motion to reconsider the denial of the motion to dismiss, which the trial court again denied. Mesquita also counterclaimed. Fourteen months later, after discovery was concluded, the trial court granted summary judgment to both Mond and Mesquita on the breach of contract and conspiracy claims, but denied summary judgment on the defamation claim and the counterclaims. At the same time, the court allowed Mond to file supplemental briefs on the jurisdictional issue. Charlton voluntarily dismissed his remaining defamation claim against Mesquita without prejudice but continued to pursue his claim against Mond. Meanwhile, Mond once more renewed his motion to dismiss for lack of personal jurisdiction, which the court finally granted. Later, a jury trial solely on Mesquita's counterclaim took place, with the jury returning a verdict for Mesquita.

Charlton contends that the trial court erred in ruling that it had no jurisdiction over Mond and asserts that Mesquita should not have been granted summary judgment. He also alleges that "the orders and judgments issued by the trial court were plainly erroneous, plainly defective, and/or contrary to law." [1]

---

1. Though Charlton cited "a number of or-    ders" as grounds for appeal (specifically re-

## II. Jurisdiction

■ We review both dismissal and summary judgment *de novo*.[2] Charlton bases his claim that the Superior Court had personal jurisdiction over Mond solely on records of telephone calls between Mond and Mesquita, neither of whom is a District of Columbia resident, as well as between Mond and other parties who are District residents. Mond made the calls prior to and on the day he terminated Charlton's contract. Charlton urges us to interpret these telephone records in the light most favorable to him[3] and to conclude that they constitute sufficient grounds for personal jurisdiction over Mond. Alternatively, he argues that Mond waived his jurisdictional defense by filing a counterclaim. We hold that jurisdiction was improper in the first instance and that the trial judge erred in denying Mond's first motion to dismiss. We also hold that when a defendant first files to dismiss and the court denies the motion, the defendant does not waive an objection to the court's jurisdiction by later filing a counterclaim.

### A. The Superior Court lacked personal jurisdiction over Mond.

■ Charlton relies on the RESTATEMENT (SECOND) OF TORTS § 577(1) (1977)[4] to support the proposition that "the situs of the defamation, venue and jurisdiction, is (sic) where the defamatory information was received." Though the situs of the alleged injury was certainly in the District because the allegedly defamatory material reached some who were indisputably District residents, we have found no case that would allow personal jurisdiction over Mond based solely on that fact. Nor do the cases Charlton relies upon support this position.[5] Had Charlton claimed personal jurisdiction over Mond as one who "caus[ed] tortious injury in the District of Columbia by an act or omission *in* the District of Columbia,"[6] his argument would have had more merit. But he cannot so argue, since Mond's phone calls originated in Maryland. Instead, Charlton must prove jurisdiction[7] under D.C.Code

---

ferring to nine in total in his notice of appeal), he meaningfully addressed only three in his brief. Because he failed to make any coherent argument as to why the remaining orders were erroneous, we will not review them. *See Cratty v. United States*, 82 U.S.App. DC. 236, 243, 163 F.2d 844, 851 (1947) (grounds of appeal noted but not briefed are considered abandoned).

2. *Chamberlain v. American Honda Finance Corp.* sets out our standard of review of a dismissed suit. 931 A.2d 1018, 1022–23 (D.C. 2007). *Holland v. Hannan* does the same for the scope of review over summary judgments. 456 A.2d 807, 814–15 (D.C.1983).

3. Insofar as he states the summary judgment standard, Charlton is correct. *Holland, supra* note 2, 456 A.2d at 815. ("The party opposing summary judgment is entitled to the benefit of all favorable inferences that can be drawn from the evidence."). In fact, the standard on a motion to dismiss is even more favorable to Charlton because the trial court must take facts alleged in the complaint as true. *Caglioti v. Dist. Hosp. Partners, Lp*, 933 A.2d 800, 807 (D.C.2007).

4. "Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed."

5. *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), cited by Charlton, did not address the issue of personal jurisdiction. In fact, the parties did not raise a jurisdictional issue in the trial court (only venue) and the Supreme Court decided the case on constitutional grounds. *Brown v. Collins*, 131 U.S.App. D.C. 68, 402 F.2d 209 (1968), the second case Charlton relies on, also lacks any discussion of personal jurisdiction.

6. D.C.Code § 13–423(a)(3) (2008) (emphasis added).

7. *Crane v. New York Zoological Soc'y*, 282 U.S.App. D.C. 295, 297, 894 F.2d 454, 456

§ 13–423(a)(4), which requires additional contacts between a defendant and the forum when the predicate act to the alleged injury originates outside the District.[8] Therefore, the proposition that the situs of a tort is located in the jurisdiction where the damage occurred, while true, does not help Charlton's jurisdictional argument.

Because there is no basis for personal jurisdiction based on the phone calls themselves,[9] Charlton needed to prove additional contacts between Mond and the District of Columbia. But even after discovery had been completed, Charlton failed to present evidence of any such contacts. The cases that Charlton relies on fail to support his argument.[10] The closest case on point is *Blumenthal v. Drudge*, where the court held that jurisdiction existed over Drudge, a California resident who was accused of defaming a White House staffer by publishing a story about him on his web site.[11] In holding so, however, the court did not rest its decision solely on the fact that the defamatory story was available to or directed at District of Columbia residents. Instead, it concentrated on the additional multiple and persistent contacts between the defendant and the forum.[12] Charlton misinterprets *Drudge* when he argues that any defendant who "knows the effect of his actions will be suffered in a particular forum ... should also expect to be brought into court there."[13] Here, both Charlton and Mond were Maryland residents. Charlton's business was registered in Maryland. The contract was negotiated and executed in Maryland.

(1990) ("The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant.").

**8.** Subsection (a)(4) allows jurisdiction over a defendant who, in addition to causing tortious injury within the District by an act outside the District, "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia...."

**9.** *See Crane v. Carr*, 259 U.S.App. D.C. 229, 234, 814 F.2d 758, 763 (1987) ("[Under subsection (a)(4)] the act outside/*impact inside* the forum is the basis for drawing the case into the court, but because the harm-generating act (or omission) occurred outside, the statute calls for something more. The 'something more' or 'plus factor' ... serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.") (emphasis in original).

**10.** Charlton cites *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), a textbook case in which the Supreme Court abandoned territorial limits on jurisdiction in favor of limits based on a "minimum contacts" test, for the proposition that a court "can acquire specific jurisdiction when the cause of action arises directly from a defendant's contacts with the forum state." In doing no more than cite *International Shoe*, Charlton does not even attempt to establish how Mond's phone calls to the District of Columbia constitute sufficient "minimum contacts."

**11.** 992 F.Supp. 44, 57 (D.D.C.1998).

**12.** Drudge's continuous and persistent contacts with District residents were proven by:

(1) the interactivity of the web site between the defendant Drudge and District residents; (2) the regular distribution of the Drudge Report via AOL, e-mail and the world wide web to District residents; (3) Drudge's solicitation and receipt of contributions from District residents; (4) the availability of the web site to District residents 24 hours a day; (5) defendant Drudge's interview with C–SPAN; and (6) defendant Drudge's contacts with District residents who provide gossip for the Drudge Report.

*Id.*

**13.** *See also McFarlane v. Esquire Magazine*, 316 U.S.App. D.C. 35, 40, 74 F.3d 1296, 1301 (1996) (holding that the sale of two allegedly defamatory articles to District-based publications does not constitute "doing or soliciting

Charlton's work on Mond's house took place entirely within Maryland pursuant to licenses and permits issued by Maryland authorities. Other than the allegedly defamatory phone calls themselves, which originated in Maryland, Charlton has presented no evidence of persistent conduct by Mond in the District. Thus, based on the facts before us, the proper forum to resolve this dispute is a Maryland court.

### B. Mond did not consent to the jurisdiction of the court by filing a counterclaim.

■ Charlton also argues that Mond's counterclaim constituted a waiver of his jurisdictional objection. He relies on *Overby v. Barnett*, where the trial court *sua sponte* dismissed a contract claim pursuant to an arbitration provision after the defendants had filed a counterclaim.[14] In *Overby*, we held that the parties waived their right to arbitrate by filing the counterclaim, and that the trial court had erred by dismissing for lack of jurisdiction. But *Overby* is not on point because it addressed the subject matter jurisdiction of the court.[15] Here the issue is personal jurisdiction over Mond. Though Charlton fails to convince us that the counterclaim

signified Mond's consent to the power of the court, the issue warrants further analysis.

Though Charlton fails to cite them, our precedents hold that filing a counterclaim operates as a waiver of an objection to personal jurisdiction.[16] The waiver does not depend on whether the counterclaim was permissive.[17] Thus, Mond's argument that he had "no choice but to file a counterclaim ... to avoid res judicata and statute of limitations issues in Maryland" lacks merit. Nevertheless, we are convinced that there was no waiver here. First, we note that in every case that we could find which has addressed this issue, defendants raised a jurisdictional defense *after* counterclaiming, unlike Mond, who objected to the court's lack of jurisdiction *before* filing a counterclaim.[18] In addition, as we have already explained, the trial court erred when it denied Mond's original motion to dismiss.[19] Moreover, Mond could have properly moved to dismiss for lack of personal jurisdiction *concurrently* with filing a counterclaim without affecting a waiver.[20] Finally, we have suggested that a denied motion to dismiss preserves the jurisdictional issue on appeal, even when the defendant counterclaims in the interim.[21]

business, or engaging in a persistent course of conduct, within the District.").

14. 262 A.2d 604 (D.C.1970).

15. Moreover, the counterclaimants themselves opposed the dismissal of the suit. *Id.*

16. *E.g., Hummel v. Koehler*, 458 A.2d 1187, 1189 (D.C.1983).

17. *North Branch Products, Inc. v. Fisher*, 109 U.S.App. D.C. 182, 186, 284 F.2d 611, 615 (1960) ("Whether or not [the counterclaim was permissive] is immaterial, for even if compulsory appellee was not compelled to pursue it....").

18. *E.g., Merchants Heat & Light Co. v. J.B. Clow & Sons*, 204 U.S. 286, 290, 27 S.Ct. 285,

51 L.Ed. 488 (1907); *Hummel, supra* note 16, 458 A.2d at 1189; *Beckwith v. Beckwith*, 355 A.2d 537, 539–40 (D.C.1976); *North Branch Products, Inc., supra* note 17, 109 U.S.App. D.C. at 186, 284 F.2d at 615.

19. *See* part II.A, *supra*.

20. Super. Ct. Civ. R. 12(b) ("No defense or objection is waived by being joined with 1 or more other defenses or objections in a responsive pleading or motion."). *See Neifeld v. Steinberg*, 438 F.2d 423, 428–31 (3d Cir. 1971); *Chase v. Pan–Pacific Broadcasting, Inc.*, 242 U.S.App. D.C. 283, 284, 750 F.2d 131, 132 (1984).

21. *North Branch Products, Inc., supra* note 17, 109 U.S.App. D.C. at 186, 284 F.2d at 615

Therefore, in a case such as this, where the defendant first claims a lack of jurisdiction and later files a counterclaim, he has effectively registered his dissent to the court's jurisdiction.[22] We hold that Mond did not consent to the court's power over his person by counterclaiming after he had moved to dismiss for lack of personal jurisdiction.[23]

### III. The contract and civil conspiracy claims

■ The trial court disposed of Charlton's contract and civil conspiracy claims by granting Mesquita's motion for summary judgment.[24] We agree that no reasonable juror could find for Charlton on the breach of contract claim because Mesquita was not a party to either of the contracts between Mond and Charlton. Non-parties owe no contractual duty to the contracting parties.[25] Therefore, the trial court properly granted summary judgment to Mesquita with respect to the contract claim.

■ With respect to the conspiracy claim, Charlton argues that "Mond's phone records and [Charlton's own] affidavits," as well as "the presence of Mesquita at Mond's home ... raise strong inferences of genuine issues of material fact as to the existence of a conspiracy." Charlton, however, does not cite a single case to support

his position. The sum of his evidence of a conspiracy (apart from his own affidavits) are phone records indicating that Mond made phone calls to Mesquita and other parties. Charlton failed to furnish any other evidence of the agreement, if any, appellees reached when they contacted each other. Despite having ten months to conduct discovery, Charlton did not even depose Mond or Mesquita.[26] Lacking any evidence, Charlton now asks "[w]hat else could they have been talking about?" Such conclusory conjecture does not carry Charlton's burden of proof and does not suffice to overcome summary judgment.[27]

### IV. The defamation claim

■ Charlton voluntarily dismissed his remaining defamation claim against Mesquita without prejudice. He now claims that the trial court misconstrued his motion to dismiss, which was meant to include Mesquita's counterclaim as well as his own claims. He asserts that the trial court failed to grant the relief he requested. The trial judge's order does show that she re-wrote the requested relief. This does not suffice, however, to prove that the judge misconstrued the relief Charlton sought. Almost all of the judge's previous orders exhibit corrections and writings in her own hand. At most, this shows that the trial judge made last minute changes

---

("Were the motion [to dismiss] denied the objection to service could have been reasserted on appeal and if then sustained the interim filing of the counterclaim would not have waived the objection.").

**22.** *See also United States v. Ligas*, 549 F.3d 497, 503 (7th Cir.2008) (motion to quash a tax lien did not waive defendant's previous objection to personal jurisdiction).

**23.** When the trial court finally granted his third motion to dismiss, Mond had to necessarily dismiss his counterclaim as well, once he convinced the court that it lacked power over his person.

**24.** *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979) ("[A] motion for summary judgment should be granted if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the nonmoving party, (3) under the appropriate burden of proof.") (footnote omitted).

**25.** *Aronoff v. Lenkin Co.*, 618 A.2d 669, 684 (D.C.1992).

**26.** At oral argument, Charlton's counsel could provide no reason for failing to do so.

**27.** *See Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C.1997).

to documents the parties had prepared for her beforehand. More importantly, the record does not indicate that Charlton objected to the order or moved the judge to reconsider. In fact, as far as we can ascertain, this is the first time he contends that the dismissal of the defamation claim was involuntary. Had the judge so seriously misconstrued Charlton's motion, the time to object was then, not now, more than four years later. By going to trial on Mesquita's counterclaim, which he now claims he did not mean to, he waived any objection he may have had to the order that retained the counterclaim while dismissing his claims.

In conclusion, because the trial court lacked personal jurisdiction over appellee Mond and since Charlton can show no other error by the trial court, we

*Affirm.*